GEORGE H. DUNSTON v. THE HOPTONIC COMPANY (A CORPORATION) ET AL.

*Corporations—Judgment creditors' bill—Parties—Part-paid stock.*

A judgment creditors' bill was filed against a corporation and five of thirty-four stockholders, one of whom was not brought in by the service of subpoena or otherwise. The remaining stockholders were alleged to own 1,020 of the 12,000 shares of stock issued by the corporation, and were sought to be charged with all of the corporate debts that the corporate assets would not meet, on the ground that they purchased their stock at 25 cents on the dollar. The bill alleged on information and belief that many of the stockholders were minors, insolvent, or non-residents of the State, but no claim was made that *all* of those not joined as defendants fell within these classes. And it is held that such general allegation fails to show that all of the stockholders were made parties who should contribute to the payment of the corporate debts, and that the bill was properly

dismissed as to the stockholder defendants for want of necessary parties, they having interposed such defense by way of demurrer.

Appeal from Kent. (Burch, J.) Argued October 8, 1890. Decided December 5, 1890.

Judgment creditors' bill against a corporation and a portion of the stockholders. Complainant appeals from decree dismissing the bill on demurrer. Decree affirmed as to stockholder defendants, and reversed as to corporation defendant, with leave to answer. The facts are stated in the opinion.

*Sweet & Perkins* (*Birney Hoyt*, of counsel), for complainant, contended:

1. The capital stock of a corporation is a trust fund for the benefit of its creditors; citing *Wood v. Dummer*, 3 Mason, 308; *Spear v. Grant*, 16 Mass. 9; *Vose v. Grant*, 15 Id. 517; *Sanger v. Upton*, 91 U. S. 56; *Hatch v. Dana*, 101 Id. 205; *County of Morgan v. Allen*, 103 Id. 498; *Sawyer v. Hoag*, 17 Wall. 620; *Hastings v. Drew*, 76 N. Y. 9; *Railway Co. v. Fitler*, 60 Penn. St. 124; *Bunn's Appeal*, 105 Id. 49; *Turnbull v. Lumber Co.*, 55 Mich. 387.

2. The obligations assumed by a corporation are nominally those of the corporate entity, not of its shareholders; but it is plain that the shareholders are the real parties in interest, which fact will be judicially recognized by compelling them to make good the security which parties dealing with the corporation are justly entitled to expect; citing 2 Mor. Priv. Corp. § 781; Cook, Stock, § 230; *Hightower v. Thornton*, 8 Ga. 486; *Holmes v. Sherwood*, 3 McCrary, 405; *Patterson v. Lynde*, 106 U. S. 519; *Ladd v. Cartwright*, 7 Or. 329; *Brown v. Fisk*, 23 Fed. Rep. 228.

3. The most usual remedy by creditors to obtain payment of their claims against the corporation in cases like the present is by bill in equity. The remedy is settled in this State, however, both by statute and the decisions of this Court under it; citing How. Stat. §§ 6614; 6615; *Turnbull v. Lumber Co.*, 55 Mich. 398; *Brewer v. Salt Association*, 58 Id. 351; *Young v. Iron Co.*, 65 Id. 111; and see *Pettibone v. McGraw*, 6 Id. 441; *Mining Co. v. Bagley*, 14 Id. 505.

4. The bill is not one for winding up the corporation, but purely and simply a judgment creditors' bill, filed to reach certain assets of a corporation. It does not pray that the corporate affairs be wound up, and, besides, the method by which a corporation can be dissolved and wound up is expressly provided by statute; citing How. Stat. chaps. 281, 282; and a special proceeding for that purpose must be instituted; citing *People v. Bank*, 12 Mich. 527; *Railway Co. v. Circuit Judge*, 31 Id. 456; *Cook v. Railroad Co.*, 45 Id. 453; *Cady v. Manfg. Co*, 48 Id. 133; *Railroad Co. v. Johnson*, 49 Id. 148; *Tripp v. Plank-road Co.*, 66 Id. 1.

5. A corporation is not dissolved by the appointment of a receiver after the return of an execution unsatisfied, nor by voluntary liquidation (citing *Mann v. Pentz*, 3 N. Y. 415; *Osgood v. Maguire*, 61 Id. 524; *Bank v. Ins. Co.*, 104 U. S. 54; *Bank v. Bank*, 14 Wall. 383), nor by disposing of its corporate property, nor by a sale of its franchises under a decree of foreclosure or on execution, nor by an assignment, nor can its insolvency extinguish its legal existence; citing *Glass Manufactory v. Langdon*, 24 Pick. 53; *Bruffett v. Railroad Co.*, 25 Ill. 353; *Swan v. Howard*, 3 Edw. Ch. 287; *Coburn v Manfg. Co.*, 10 Gray, 245; *State v. Rives*, 5 Ired. 309; *De Camp v. Alward,.* 52 Ind. 473; nor is it dissolved by cessation of active business, nor by a neglect to hold annual meetings for ten years, nor by ceasing to exercise corporate powers; citing *Hotel Co. v. Sauer,.* 65 Mo. 288; *Bank v. Robidoux*, 57 Id. 446; *Rorke v. Thomas*, 56 N. Y. 563; *State v. Barron*, 58 N. H. 370; *Rollins v. Clay*, 33 Me. 132; nor does a corporation lose its corporate capacity merely by a perversion or abuse of its powers, nor by an omission to elect officers, nor by a sequestration of its property; citing *Clancey v. Manfg. Co.*, 62 Barb. 395; *Allen v. Railroad Co.*, 49 How. Pr. 14; *Com. v. Cullen*, 13 Penn. St. 133; *Evarts v. Manfg. Co.*, 20 Conn. 447; *Harris v. Railroad Co.*, 51 Miss. 602; *Cahill v. Ins. Co.*, 2 Doug. 140; nor will it be dissolved by being enjoined from exercising its corporate powers, nor by a lease and transfer of its whole road, nor because its stockholders and directors may consider it defunct; citing *Kincade v. Dwinelle*, 59 N. Y. 548; *Rollins v. Clay*, 33 Me. 132; *Railway Co. v. Fitier*, 60 Penn. St. 132; *Rosenblatt v. Johnston*, 104 U. S. 463.

6. The defendants are not *bona fide* purchasers of the stock held by them. There are some cases holding that innocent purchasers of stock in the open market, without notice, knowledge, or means of knowledge that the stock they purchase is not fully paid up, are not liable for the unpaid balance; citing *Foreman v. Bigelow*, 4 Clif. 508; *Steacy v. Railroad Co.*, 5

Dill. 348, 376; *Young v. Iron Co.*, 65 Mich. 125; but in those cases it is stated or intimated that this doctrine does not apply when the purchaser has notice or means of knowing that the stock is not fully paid; and the defendants are within this exception.

7. The acceptance of a part-paid certificate *ipso facto* obligates the holder to make up its par value, if the duty of the corporation to its creditors requires it; citing *McKim v. Glenn*, 66 Md. 479; *Glenn v. Scott*, 28 Fed. Rep. 804; *Flinn v. Bagley*, 7 Id. 785; *Holmes v. Sherwood*, 3 McCrary, 405; *Jackson v. Traer*, 64 Iowa, 469; *Lee v. Imbrie*, 13 Or. 510; and any secret arrangement between the corporation and its stockholders by which the responsibility of the latter is made less than it appears to be is void as against creditors; citing *Thompson v. Bank*, 19 Nev. 103; *Sagory v. Dubois*, 3 Sandf. Ch. 466; *Upton v. Tribilcock*, 91 U. S. 45; *Webster v. Upton*, Id. 65; *Upton v. Hansbrough*, 3 Biss. 417; *Hawley v. Upton*, 102 U. S. 316.

8. It has been established in this State that in proceedings of this kind it is not necessary to make all of the stockholders defendants; citing *Pettibone v. McGraw*, 6 Mich. 441; and the same doctrine is supported by the following cases: *Wood v. Dummer*, 3 Mason, 308; *Bartlett v. Drew*, 57 N. Y. 587; *Pierce v. Construction Co.*, 38 Wis. 253; *Marsh v. Burroughs*, 1 Woods, 468; *Ogilvie v. Ins. Co.*, 22 How. 380; *Holmes v. Sherwood*, 3 McCrary, 405; *Hatch v. Dana*, 101 U. S. 210; *Brundage v. Mining Co.*, 12 Or. 328; *Glenn v. Williams*, 60 Md. 116; *Vanderwerken v. Glenn*, 85 Va. 9; *Cornell's Appeal*, 114 Penn. St. 153; *Tabor v. Goss*, 11 Col. 419; *Thompson v. Bank*, 19 Nev. 103; *Crawford v. Rohrer*, 59 Md. 599.

*Butterfield & Keeney* and *Blair, Kingsley & Kleinhans*, for defendants Spring, Talford, and Lucas, contended:

1. In support of claim that it is necessary to make parties defendant all *solvent* stockholders who are within the jurisdiction if practicable to do so, counsel cited *Adler v. Manfg. Co.*, 13 Wis. 57; *Coleman v. White*, 14 Id. 700; *Vick v. Lane*, 56 Miss. 681; *Mann v. Pentz*, 3 N. Y. 415; *Griffith v. Mangam*, 73 Id. 611; *Morgan v. Railroad Co.*, 10 Paige, 290, 294; *Wellington v. Construction Co.*, 5 N. Y. Supp. 587; *Hadley v. Russell*, 40 N. H. 109; *Erickson v. Nesmith*, 46 Id. 371; *Umsted v. Buskirk*, 17 Ohio St. 113; *Bonewitz v. Bank*, 41 Id. 78; Thomp. Liab. Stockh. § 353; *Crease v. Babcock*, 10 Metc. 525; *Vose v. Grant*, 15 Mass. 505; *Jones v. Jarman*, 34 Ark. 339; *Matthews v. Albert*, 24 Md. 527; *Smith v. Huckabee*, 53 Ala. 191; *Erickson v. Nesmith*, 4 Allen, 236; *Wheeler v. Faurot*, 37 Ohio St. 26;

*Bullock v. Kilgour,* 39 Id. 546; *Overmyer v. Cannon,* 82 Ind. 459; *Brewer v. Salt Association,* 58 Mich. 351.

*Uhl & Crane,* for defendant Swensberg, contended:

1. As the statute evidently contemplates that the assets of the corporation and its total indebtedness must be brought into the account in a case like this, all of the stockholders must be made parties.

2. A strong statement of the reasons why all the stockholders should be made parties in order to ascertain the assets of the corporation is found in *Wetherbee v. Baker,* 35 N. J. Eq. 501, although the case itself does not decide this point.

LONG, J. The bill was filed in this cause as a judgment creditors' bill April 24, 1889, and on the same day subpœna to appear and answer was duly issued directed to said defendants, returnable May 22, 1889. Subpœna was personally served upon all the defendants except John S. Long, who could not be found, as appears from the return of the sheriff on file in the cause. The cause was heard in the court below upon bill of complaint and demurrers, and the demurrers were sustained. Complainant appeals.

The bill alleges, substantially, that complainant obtained two judgments against the Hoptonic Company, upon which executions were issued and returned unsatisfied, and that such judgments remain in full force and effect and unpaid. It is further alleged that the Hoptonic Company has equitable interests, things in action, and other property, of the value of upwards of $100, exclusive of all prior claims thereon, which the complainant has not been able to discover and reach by execution. Other allegations are contained in the bill, usual to judgment creditors' bills.

Paragraph 6 of the bill alleges that the Hoptonic Company was organized as a corporation on or about April 8, 1885, under an act of the Legislature of Michigan entitled "An act for the incorporation of manufacturing

companies," approved May 1, 1875, and the acts amenda-tory thereto. The articles of association were filed in April, 1885, in the office of the clerk of Kent county, and in the office of the Secretary of State. The purpose of the corporation was to engage in carrying on the manufacture of Hoptonic, a medicinal preparation, either as a medicine or medical beverage, under and by virtue of a certain trade-mark of the United States; the amount of the capital stock to be $300,000, divided into 12,000 shares, of $25 each. The property, stock, affairs, and business were to be managed by five directors; the office and business place of the corporation to be at Grand Rapids, Kent county, Mich.; the board of directors to choose annually a president, vice-president, secretary, and treasurer; the corporation to continue in business for 30 years. The original subscribers to the articles of association, as set out in the bill, were: Walter S. Hicks, Ann Arbor, Mich., 4,000 shares; John S. Long, Grand Rapids, Mich., 6,399 shares; Charles F. Cobb, Grand Rapids, Mich., 1 share; David F. True, Chicago, Ill., 1,200 shares; Ammi H. Pike, Chicago, Ill., 400 shares. It is alleged that the company, from the date of its organization down to October, 1886, carried on its business upon an extensive scale, and procured from complainant, and from various other parties, advertising materials in large quantities; that on or about October 7, 1886, said company gave a chattel mortgage upon all its personal property of every description running to Julius Houseman, as trustee for the Fourth National Bank of Grand Rapids, John S. Long, one of the defendants, and Spring & Co., a firm of which said Henry Spring is a member, securing the payment of $16,221.45 in the aggregate; that the value of such personal property is little, if any, greater than the amount of such mortgage; that said corporation is insolv-

ent, and has ceased carrying on its said business, or any business whatever, except in a small way.

The bill further alleges that—

"On or about the 12th day of January, 1886, said corporation filed its annual statement, as required by law, in and by which it appeared that the capital stock of said company was $300,000; that the amount of capital stock actually paid in on the 31st day of December, 1885, was $13,562.50, and it owned personal estate, not including the value of its trade-mark, formulæ, and for sign patents, to the amount of $17,493.21; that the amount of credits of the said corporation was $2,748.50, and the amount of debts of the said corporation was $6,210.03; that there were at that time 34 stockholders, many of whom, your orator is informed and believes, were minors, insolvent, or non-residents of the State of Michigan; that in and by said report, it appears that said defendant John S. Long was the owner of 3,200 shares of the stock of said corporation; that said defendant Conrad G. Swensberg was the owner of 400 shares of the said stock; that said defendant Henry Spring was the owner of 400 shares of the said stock; that said defendant William D. Talford was the owner of 160 shares of said stock; that said defendant Thomas J. Lucas was the owner of 60 shares of said stock.

"That said defendant corporation did not file any annual report of its condition for the year 1886, nor any report since its organization, other than the one mentioned as filed on January 12, 1886; that your orator is informed and believes that the said defendants John S. Long, Conrad G. Swensberg, Henry Spring, William D. Talford, and Thomas J. Lucas have, since the date of said report, filed in January, 1886, purchased from the other stockholders in said corporation a large amount of the stock so held by them, and are now the owners of a larger amount of the stock of said corporation than was stated in said report, but the precise amount of the stock so owned by said defendants respectively your orator is unable to learn and cannot state.

"Your orator further shows on information and belief, and charges the fact to be, that said defendants John S. Long, Conrad G. Swensberg, Henry Spring, William D. Talford, and Thomas J. Lucas have not paid upwards of 25 cents on a dollar for said stock; that said stock was issued by said corporation to said defendants and the other stockholders in the usual way, and certificates issued to them respectively therefor by said corporation; that the same purported to be non-assessable and fully paid up; but that in fact no more than 25 per cent. of the par value of the stock had ever been paid by said defendants thereon.

"Your orator is informed and believes that a few of the stockholders, other than those made defendants herein, paid 50 cents on the dollar for their stock in said corporation, but that none of them have ever paid the full par value of said stock, and that most of them have only paid 25 per cent. thereof.

"Your orator is informed and believes that the amount of capital actually paid in is only the sum of $13,562.50, the same as was stated in said annual report filed January 12, 1886; and your orator, upon information and belief, charges the fact to be that all of the stock of said corporation, amounting to 12,000 shares of $25 each, had been issued prior to the 12th day of January, 1886, by said corporation.

"Your orator further charges on information and belief that said defendant John S. Long is, and ever since the organization of said corporation has been, the president of said corporation; that said defendant William D. Talford is, and for a long time past has been, the treasurer of said corporation; and that said defendants Henry Spring and Conrad G. Swensberg are, and for a long time have been, the directors of said corporation.

"Your orator further shows that said defendants Long, Spring, Swensberg, and Talford have been generally known as wealthy and successful business men, and that their connection with said corporation, especially their prominent positions as officers and directors therein, have given greater credit to said corporation than it would otherwise have had; that your orator gave credit, and furnished advertising material, and performed labor for said corporation, and that he is informed and believes that other creditors have given credit to said corporation, because of the connection of said Long, Spring, Swensberg, and Talford with said corporation, and in the belief that the stock of said corporation was issued in good faith and represented actual capital paid into its business, and that, if not so actually paid in, the same would be forthcoming from said stockholders at any time when it should be needed.     *     *     *

"Your orator avers on information and belief that said defendants John S. Long, Conrad G. Swensberg, Henry Spring, William D. Talford, and Thomas J. Lucas were fully cognizant of the condition of said company, and knew that the stock which they or some of them purchased from other stockholders had not been fully paid up. And he avers that the unpaid balance due on the stock as originally issued by said corporation to said defendants last named, as well as upon the stock so subsequently purchased by them, constitutes an equitable asset of said Hoptonic Company, which is liable to be, and should be, subjected to the payment of the debts of said corporation; that said balance constitutes a trust fund for the payment of creditors of said company; and that no pretended arrangement or agreement, by which said stock was or

should be issued as paid-up stock on the payment of only part of its par value, is valid or binding as to your orator or the other creditors of said corporation.

"Your orator further shows on information and belief that the pretended claims of said defendants Long and Spring against said company are not *bona fide* claims against said corporation.

"Your orator files this, his bill of complaint, in behalf of himself and such other creditors of said Hoptonic Company as may make themselves parties to these proceedings. Your orator therefore prays—

"1. That the said defendants may, upon their several and respective corporal oaths, full, true, direct, and perfect answer make all and singular the matters hereinbefore stated and charged, as fully and particularly, sentence by sentence, paragraph by paragraph, as if the same were here again repeated, and they thereto particularly interrogated, and that not only to the best of their respective knowledge and remembrance, but also as to the best of their several and respective information, hearsay, and belief; and that they may answer and set forth all the estate, real or personal, of every description, goods, chattels, money, book-accounts, due-bills, promissory notes, bonds, mortgages, judgments, and other choses in action, and each of them, belonging to the said Hoptonic Company, as well at the time of issuing said writs of *fieri facias* as at the time of filing this bill, whether standing in its name or in the hands of any other person or persons for its use, or in trust for it, either express or implied (except the trust hereinbefore mentioned), and what disposition has been made of each of the same, stating fully the amount, condition, situation, and value of each of them, the names and places of the residence of the debtors respectively, and the evidence of their indebtedness; and that they may set forth and state how much is due on each of such demands, and which of them are good and collectible, and which of them are doubtful, and which of them are uncollectible, and who has the possession, custody, or control of the said real and personal estate, goods, chattels, money, book-accounts, due-bills, promissory notes, bonds, mortgages, judgments, and other choses in action, and each of them.

"2. That a receiver of the money, property, things in action, and effects of the said defendant Hoptonic Company, with the usual powers and authority, may be appointed by this court; and that the said defendant Hoptonic Company may be directed to assign, transfer, and deliver, by its proper officers, upon oath, to said receiver, all its property, equitable interests, things in action, money, and effects, and all the books and papers relating thereto, and evidences thereof.

"3. That your orator may have satisfaction of the sums due to

him on the judgments aforesaid against said company, together with his costs and charges in this behalf; and that all other creditors of said company who shall make themselves parties hereto may have satisfaction of their just claims against said company out of the said money, property, equitable interests, and things in action of the said Hoptonic Company.

"4. That the said Hoptonic Company and its attorneys, counselors, agents, and servants may be enjoined from collecting, interfering, meddling with, or disposing of any debts or demands due to it, or any real or personal estate, goods, chattels, wares, merchandise, account-books, bills, checks, promissory notes, bonds, mortgages, judgments, or other securities, things in action, property, or effects, whether in its own possession or in the names or hands of any other person or persons for its use or benefit, or in trust for it, express or implied, except where such trust has been created by, or the funds held in trust have proceeded from, some person other than the said Hoptonic Company, until the further order of this honorable court.

"5. That, in case the property of the said Hoptonic Company be insufficient to pay and discharge in full its debts to your orator, and its other creditors, the said defendants John S. Long, Conrad G. Swensberg, Henry Spring, William D. Talford, and Thomas J. Lucas be ordered and decreed severally to pay to the receiver in this cause, or to the register, or to a commissioner of this court, the amount remaining due and unpaid on the shares of stock so held and owned by them in the said Hoptonic Company; and that your orator and the other creditors of said company may have satisfaction in their claims out of the funds so created.

"6. That your orator may have such other and further relief in the premises as may be just and equitable."

All of the defendants, except Lucas, filed general demurrers. Defendant Lucas filed a special demurrer, and for causes of demurrer set out:

"1. That it appears by said bill that the same is exhibited against this defendant, and the several other persons therein named as defendants thereto, for distinct matters and causes, in several whereof, as appears by the said bill, this defendant is not in any manner interested or concerned, and that the said bill is altogether multifarious.

"2. That it doth not appear by said bill that all the solvent stockholders of said Hoptonic Company who are within the jurisdiction of this court are made parties thereto.

"3. That it doth appear by said complainant's bill that there are stockholders in said Hoptonic Company other than those made parties to this suit, and it doth not appear from said bill that such

stockholders are insolvent or beyond the jurisdiction of this court, nor doth it in any manner sufficiently appear therefrom why such other stockholders are not made parties to said bill; yet the said complainant hath not made them parties thereto.

" 4. That it doth appear by said complainant's bill that Walter S. Hicks and Charles F. Cobb, residents of the State of Michigan, and within the jurisdiction of this court, were stockholders of said Hoptonic Company, and it doth not in any manner sufficiently appear from said bill why the said Walter S. Hicks and Charles F. Cobb are not made parties to said bill; yet the said complainant hath not made them parties thereto.

" 5. That the said complainant hath not in and by his said bill made or stated such a cause as doth or ought to entitle him to any such discovery or relief as is thereby sought and prayed for from or against this defendant."

But two questions are argued here:

1. That the bill is defective for want of parties.
2. It is demurrable for want of equity.

The bill is filed as a judgment creditors' bill, after the return of execution unsatisfied, for the appointment of a receiver, and for other relief. It is sought, in case full relief is not otherwise had, to hold certain stockholders liable on the ground that the stock held by them is not fully paid. The bill is filed on behalf of the complainant, and such other creditors of the company as may make themselves parties to the proceedings. John S. Long is named in the bill as party defendant. He is alleged to be an original subscriber; but he was not served with process. Besides Mr. Long, only 4 out of the 34 stockholders of the company are made parties. The other defendants, Spring, Talford, Swensberg, and Lucas, are not subscribers to the capital stock, but, as the bill alleges, became purchasers of the stock after the company was incorporated. It is charged that Long, Spring, Swensberg, and Talford were successful business men, and their being interested in the corporation gave it greater credit, and that they purchased stock at 25 cents on the dollar. It appears from the bill that not one of

the original subscribers to the capital stock is made a party defendant to the bill except Mr. Long, and he is not brought in. The parties who are brought in, it is claimed, own 1,020 shares out of the 12,000 shares, into which the stock of the corporation is divided, and it is sought by the bill to charge them with all the debts of the corporation that the assets of the corporation will not meet, and on the ground that they purchased their stock below its face value. There is an allegation in the bill upon information and belief that many of the stockholders are minors, insolvent, or non-residents, of the State; but no claim is made that all those who are not made parties are either minors, insolvent, or non-residents of the State. Among the original subscribers to the capital stock, as appears by the bill, are Walter S. Hicks, of Ann Arbor, Mich., subscriber for 4,000 shares, and Charles F. Cobb, of Grand Rapids, Mich., subscriber for one share, and yet they are not made parties, and no showing is made but that they still retain their stock, are solvent, and reside within the jurisdiction. Under the state of facts it is insisted by defendants' counsel that it is necessary to make parties defendant all solvent stockholders who are within the jurisdiction if it is practicable to do so. The doctrine is stated in Thompson on Liability of Stockholders (section 353), as follows:

"The bill must be filed against all the shareholders, unless some valid excuse is shown for not bringing them in. This must necessarily be so, otherwise the main object of asserting the jurisdiction of equity, the equalizing of the burdens of shareholders, and the preventing of the multiplicity of suits, would be defeated. Under such a bill, an account will be taken of the debts and assets of the corporation, of the amount of capital not paid in, and the amount due from each shareholder."

Chief Justice Dixon, in *Adler v. Manufacturing Co.,* 13 Wis. 57, in a case where a bill was filed to enforce

the liability of stockholders upon unpaid stock, said:

"The authorities show that in such actions, unless it be impossible or impracticable, all the stockholders must be made parties. This is required in order to enable the court to do complete justice between the stockholders themselves, and so that no one of them may be compelled to pay more than his due proportion, and that all alike may be obliged, according to the number of their respective shares and their pecuniary ability, to contribute toward the losses which the company may have sustained; for it would be manifestly wrong and unjust to allow the creditors to select one or more of the stockholders and compel them to submit to burdens from which the other shareholders, though equally bound, are exonerated. Hence, the shareholding defendants have the right, unless some good reason for the omission be shown, to insist on all the other shareholders being parties also."

This seems to be the rule as established by the great weight of authority, and I think it is the just, reasonable, and equitable one. Any other rule would permit the creditors of the corporation to select one or only a few of the stockholders within the jurisdiction, and compel payment by them of all the debts of the corporation, at least up to the unpaid balance of their subscription, and such subscribing stockholders, in order to compel the others to contribute, would be remitted again to the courts, thus leading to a multiplicity of suits.

In the case of *Young v. Iron Co.*, 65 Mich. 111, a creditors' bill was filed against a corporation and certain of its stockholders. The bill alleged that the corporation was insolvent, and sought to charge the stockholders with the unpaid balance upon the stock held by them. The cause was heard before Mr. Justice GRANT, then sitting in the Marquette circuit. Certain findings were made by him in framing the decree, and, on appeal to this Court, such findings were quoted in the opinion. The decree was reversed, yet no fault was found with the conclusions then

stated upon that branch of the case.  It was there said by him:

"It does not appear that there are any other like holders of stock of said corporation pecuniarily responsible within the jurisdiction of this court, but the question thereof will be referred to the commissioner under the order of reference herein made, and if it be discovered that there are other like holders of stock who are pecuniarily responsible for such decree as may be rendered against them herein, and who reside, or can be found, within the jurisdiction of this court, they shall be made parties defendant in this suit; but, if not, the said last-named defendants must share *pro rata,* according to the number of shares of stock held by each, in the payment of the said debts of said corporation."

This doctrine is fully recognized in New York.  *Mann v. Peutz,* 3 N. Y. 415; *Morgan v. Railroad Co.,* 10 Paige, 290; *Griffith v. Mangam,* 73 N. Y. 611; *Wellington v. Construction Co.,* 5 N. Y. Supp. 587.  The supreme court of New Hampshire also hold the same doctrine.  *Hadley v. Russell,* 40 N. H. 109; *Erickson v. Nesmith,* 46 Id. 371.

It was an easy matter for the complainant to have ascertained who the stockholders were at the time of filing the bill, and whether they were within the jurisdiction. It is not pretended that any such effort was made, and the general allegation that some of the stockholders were insolvent, minors, and non-residents does not show that all were made parties who should contribute to the payment of the debts of the corporation.  The demurrers must be sustained as to all the defendants except defendant corporation, on the ground that the bill cannot be maintained against such defendants for want of necessary parties.

A more difficult question is presented under the other cause of demurrer, but that question need not now be discussed or determined, and we shall not pass upon it

83 MICH—25.

as the bill is now framed. The court below very properly sustained the demurrers to the bill, on the ground of the want of necessary parties, and whether he was in error in sustaining the demurrer for want of equity in the bill we do not pass upon. The decree dismissing the bill as to all the parties except the corporation will be affirmed, with costs to such defendants.

But the bill was properly filed against the corporation, and will stand as a judgment creditors' bill as to it, and under which, upon proper proceedings, the complainant would have the right to the appointment of a receiver. The defendant corporation will be allowed 30 days in which to answer the bill.

CHAMPLIN, C. J., CAHILL and GRANT, JJ., concurred. MORSE, J., did not sit.